# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BAUMANN FARMS, LLP
a Wisconsin limited liability partnership;
GLENN HEIER; and AARON KAISER,

                        Plaintiffs,

        v.                                      Case No. 16-CV-605

YIN WALL CITY, INC., an Illinois corporation;
SUT I. FONG; CHOENG SAT O;
YIN WALL CITY, INC., a Texas corporation; and
YIN WALL CITY, DALLAS, INC., a Texas corporation,

                        Defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Defendants Yin Wall City, Inc. (an Illinois Corporation), Sut I. Fong, Choeng Sat O, Yin Wall City, Inc. (a Texas corporation), and Yin Wall City, Dallas, Inc. (a Texas corporation) (all collectively referred to herein as "YWC") move to dismiss the class action complaint of plaintiffs Baumann Farms, LLP (a Wisconsin limited liability partnership), Glenn Heier, and Aaron Kaiser (collectively "Baumann"). (ECF No. 11.) Having the consent of the parties (ECF Nos. 2, 10), the matter is briefed and ready for resolution.

## I. Background

This case involves ginseng root, a root cultivated in Asia and North America that is associated with certain medicinal effects that sooth the recipient.[1] According to Baumann's complaint, Wisconsin-grown ginseng root sells at a premium of two and one-half to three and one-half times the price of ginseng root grown elsewhere. (ECF No. 1, at 2.) This demand is driven by Wisconsin-grown ginseng's purity and high levels of the medicinally active ingredient, ginsenocide.[2] (ECF No. 1 at 2.) Given the demand, there have been reports of U.S. wholesalers and retailers importing bulk ginseng from outside the United States and packaging it as "grown in Wisconsin" so as to obtain a higher price.[3]

Baumann filed this class action lawsuit alleging that the YWC defendants engaged in precisely such behavior: YWC imported and repackaged in-bulk (as opposed to pre-packaged) ginseng root from China and sold it as ginseng grown in Wisconsin. (ECF No. 1, ¶ 6.) The complaint alleges that the YWC defendants violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by falsely advertising their products and engaging in unfair competition.

---

[1] *American ginseng*, UNIVERSITY OF MARYLAND MEDICAL CENTER, https://umm.edu/health/medical/altmed/herb/american-ginseng (last visited Nov. 14, 2016).
[2] *Why Wisconsin Ginseng?*, GINSENG BOARD OF WISCONSIN, http://www.ginsengboard.com/pages/service-style-1/ (last visited Nov. 14, 2016).
[3] Frank Shyong, *American ginseng has a loyal Chinese clientele*, LA TIMES, http://www.latimes.com/local/california/la-me-adv-ginseng-american-20150301-story.html (Feb. 28, 2015).

YWC's motion to dismiss challenges this court's jurisdiction. It sets forth two grounds for dismissal: (1) this court cannot establish either general or specific personal jurisdiction over YWC, and (2) Baumann has not plausibly pled the requisite amount in controversy for this court to exercise subject matter jurisdiction over this class action. YWC further moves for dismissal of the non-corporate defendants (Fong and Sat O). Lastly, YWC argues that, as a non-class action, none of the plaintiffs have demonstrated entitlement to any damages as stand-alone plaintiffs.

YWC previously was sued by the Ginseng Board of Wisconsin in the Northern District of Illinois for the same underlying conduct. (ECF No. 11 at 3.)[4] That lawsuit was dismissed with prejudice on July 27, 2016. (ECF No. 13-1, Exh. B.) Nevertheless, plaintiffs possess certain information as a result of that suit which they reference in arguing for personal jurisdiction and meeting the amount in controversy requirement.

## II. Personal Jurisdiction

### a. Jurisdictional Facts

Through a declaration by defendant Sat O, all defendants avow that they do not: (a) reside in Wisconsin; (b) maintain any office in Wisconsin; (c) own or lease any real estate in Wisconsin; (d) maintain any bank accounts in Wisconsin; (e) have any personal property in Wisconsin; (f) have any telephone listings in Wisconsin; (g) are licensed to do business in Wisconsin; (h) maintain any active website enabling purchase of

---

[4] That action was styled *Ginseng Board of Wisconsin, Inc. v. Yin Wall City, Inc. et al.,* No. 1:15-cv-04057 (N.D. Ill. 2015).

products by any persons in Wisconsin or elsewhere; (i) sell any product in Wisconsin, by order over the telephone or otherwise; (j) ship any products into the State of Wisconsin; or (k) target Wisconsin as a market for ginseng products they package for resale, by advertising, marketing, or otherwise. (ECF No. 12, at 1-2, ¶ 3.) Sat O's declaration further states:

> The only transaction that the YWC Defendants have had with a Wisconsin entity is the purchase of prepackaged ginseng from Hsu's Ginseng Enterprises Inc. of Wasusau, WI, which product was resold in the YWC Defendants' retail stores without any modification. This product is not the subject of any allegations by Plaintiffs in this lawsuit.

(ECF No. 12, at 2, ¶ 5.)

Contradicting Sat O's declaration that the *only* transaction the YWC Defendants have had with a Wisconsin entity was the purchase of prepackaged ginseng from Hsu's Ginseng ("Hsu's"), Baumann presents an invoice showing that YWC purchased $45,000.00 worth of bulk ginseng from "Grandco Inc."– a company operating in Wausau, Wisconsin—in June 2015. (ECF No. 16-4.) Baumann also provides invoices between YWC and Hsu's that show that YWC purchased ginseng from Hsu's several times per year between 2008 and 2015, for a total of approximately 31 interactions.[5] (ECF No. 16-3.)

In reply, YWC admits that its contacts with Wisconsin do indeed include the purchase of bulk ginseng from Grandco, Inc. YWC does not say whether the June 2015

---

[5] Several of the invoices submitted as part of Exhibit C were virtually illegible, making determining the exact number of transactions difficult. *See e.g.* ECF No. 16-3 at 7, 19.

purchase evidenced by the invoice submitted by Baumann was the only transaction between YWC and Grandco, Inc. or only one of many. Regardless, that admission in the reply brief is in conflict with Sat O's declaration.

### b. Legal Background

When challenged by a defendant, the plaintiff bears the burden of establishing personal jurisdiction. *N. Grain Mktg., LLC. v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Where no evidentiary hearing is held, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (emphasis in original). "In evaluating whether the prima facie showing has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Id.* (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

With that in mind, the question of personal jurisdiction begins with the laws of the state in which the federal district court sits. *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."); *see also* Fed. R. Civ. P. 4(k)(1)(A). "Under Wisconsin law, the jurisdictional question has two components. First, the plaintiff must establish that the defendants come within the grasp of the Wisconsin long arm statute." *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). "If the plaintiff is successful, the

5

Case 2:16-cv-00605-WED   Filed 11/29/16   Page 5 of 15   Document 19

burden switches to the defendants to show that jurisdiction would violate due process." *Id*.

The defendants do not dispute that they come within the grasp of the Wisconsin long-arm statute. "Then, because Wisconsin presumes its long-arm statute merely codifies the federal due process requirements, the burden switches to [defendant] to show that jurisdiction would nonetheless violate due process." *Logan Prod., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996) (citing *Lincoln v. Seawright*, 104 Wis. 2d 4, 10, 310 N.W.2d 596, 599 (1981) ("Sec. 801.05 was drafted to attempt to codify the minimum contacts sufficient to comport with a defendant's right to due process."))

Turning to the due process inquiry, the Supreme Court in *International Shoe v. Washington* held that a defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "The 'quality and nature' of an interstate transaction may sometimes be so 'random,' 'fortuitous,' or 'attenuated' that it cannot fairly be said that the potential defendant 'should reasonably anticipate being haled into court' in another jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Subsequent interpretation of *International Shoe* has split personal jurisdiction into two categories – general and specific—under either of which a court may assert

6

personal jurisdiction over a defendant. *Daimler AG*, 134 S. Ct. at 754. General—or "all purpose" – jurisdiction exists when the defendant's contacts with the forum state are so "continuous and systematic" as to render it essentially at home in the forum state. *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. Importantly for present purposes, the Supreme Court has long ascribed to the notion that "[m]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) (citing *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516, 518 (1923)).

Specific jurisdiction, on the other hand, "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1125 n. 6 (2014) (quoting *Goodyear*, 564 U.S. at 919). In *Walden*, the Supreme Court expounded upon the "minimum contacts" needed for specific jurisdiction: due process requires that (1) "the relationship must arise out of contacts that the 'defendant *himself*' creates with the

7

forum State" and (2) the defendant's contact must be "with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122 (emphasis in original). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state." *Id.* Specific jurisdiction is case-linked; non-suit related activities in the forum state cannot be used to satisfy the "minimum contacts" necessary for specific jurisdiction. *See Advanced Tactical Ordinance Sys. LLC, v. Real Action Paintball*, 751 F.3d 796, 801 (7th Cir. 2014).

Baumann's complaint alleges an intentional tort under the Lanham Act. In that context the Supreme Court has said:

> In [the intentional tort] context, it is likewise insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff. A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.

*Walden*, 134 S. Ct. at 1123. Further, a "mere injury to a forum resident is not a sufficient connection to the forum." *Id*. at 1125.

### c. General Personal Jurisdiction

The YWC defendants argue that their relatively few purchases of ginseng from Wisconsin should not be considered the "continuous and systematic general business contacts" needed to subject it to the general personal jurisdiction of this state. *See Steel Warehouse of Wisconsin,* 154 F.3d at 714 (7th Cir. 1998). The YWC defendants do not

target Wisconsin for any of their sales, and merely purchasing some of their ginseng from Wisconsin does not subject YWC to the general personal jurisdiction of Wisconsin.

Baumann responds that the YWC defendants do have continuous and systematic contacts with Wisconsin sufficient to establish general personal jurisdiction over them. Baumann argues that defendants "have relied and depended upon Wisconsin's transportation and communications infrastructure, laws and law enforcement, and overall civil society in entering into these purchase transactions over nearly a decade." (ECF No. 14, at 11.)

The court cannot conclude that the YWC defendants are subject to the general personal jurisdiction of this court. Baumann alleges that YWC has made approximately thirty-two purchases over an eight-year span from companies in Wisconsin. Such a relatively small number of purchases over an eight year period is not "sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701. "[M]ere purchases . . . are not enough to warrant a State's assertion of in personam jurisdiction . . . in a cause of action not related to those purchase transactions." *Helicopteros*, 466 U.S. 408, 418. Therefore, YWC has shown that exercising general personal jurisdiction over them in Wisconsin would violate their right to due process.

Thus, if this court has personal jurisdiction over the YWC defendants, it must be because they are subject to specific personal jurisdiction on the basis of their conduct as alleged in this lawsuit.

### d. Specific Personal Jurisdiction

As for specific personal jurisdiction, the YWC defendants argue they have no jurisdictionally relevant contact with Wisconsin. At issue here is bulk ginseng that was allegedly imported from China and repackaged for sale at YWC's non-Wisconsin locations. Neither the importation nor repackaging occurred in Wisconsin. And the contacts that YWC *does* have with Wisconsin are not involved in this lawsuit. From Hsus's, YWC purchased only *pre-packaged* ginseng, not *bulk* ginseng. (ECF No. 12, at 2, ¶ 5). From Grandco, Inc., the ginseng purchased was *Wisconsin-grown* bulk ginseng, not the Chinese ginseng that is the subject of the complaint. Therefore, YWC is not subject to the specific personal jurisdiction of Wisconsin. *See Advanced Tactical*, 751 F.3d at 801.

Baumann argues that specific personal jurisdiction does exist over the YWC defendants. YWC purchased $45,000 of bulk ginseng from Grandco, Inc. in June of 2015. "[G]iven the fact that Grandco's invoice (evidencing a sale valued in excess of $45,000), had terms of 'net 90 days,' one can surmise that this was not the parties' first business transaction." (ECF No. 14, at 12, n. 24.) And since the purchase, repackaging, and sale of *bulk* ginseng forms the factual underpinnings of Baumann's claims, this court has specific jurisdiction.

Baumann argues that specific personal jurisdiction also exists by virtue of the YWC defendants' intentionally mislabeling their ginseng as grown in Wisconsin. *See Calder v. Jones*, 465 U.S. 478 (1984); *Walden v. Fiore,* 134 S. Ct. 1115 (2014). This intentional

10

conduct was expressly aimed at harming Wisconsin ginseng growers by disrupting the market for Wisconsin ginseng, both by increasing its supply and by substituting an inferior product into the market. Because YWC targeted Wisconsin's ginseng farmers, there is specific jurisdiction over YWC in Wisconsin.

YWC can hardly argue that litigation in Wisconsin would be "random, fortuitous, or attenuated" or based solely on "the unilateral action of the plaintiffs." *Walden*, 134 S. Ct. at 1123 (citing *Burger King*, 471 U.S. at 475). It was the YWC defendants that placed the name of the forum—"Wisconsin"—on their boxes. In doing so they intentionally sought to exploit the sales boost that comes from ginseng supposedly grown in Wisconsin. These actions involve the forum, not merely the individual plaintiffs. *See Walden*, 134 S. Ct. 1125. Wisconsin, in fact, was the *particular* forum that YWC intended its products to be associated with. Nothing about litigation in Wisconsin, then, can be considered random. Considered as a whole, it is clear that YWC created sufficient minimum contacts with Wisconsin for purposes of specific personal jurisdiction.

Moreover, asserting specific personal jurisdiction here comports with the "fair play and substantial justice" standards laid down by *International Shoe*. The YWC defendants should have anticipated facing a lawsuit in Wisconsin when they falsely branded their products as originating from here. The court finds that it has specific

personal jurisdiction over the YWC defendants. Their motion to dismiss on this basis is **denied.**

### III. Subject Matter Jurisdiction

The Class Action Fairness Act of 2005 ("CAFA") amended the diversity statute to expand the availability of diversity jurisdiction for class action lawsuits. *See* S. Rep. No. 109-14, at 5 (2005) ("[T]his bill (a) amends section 1332 to allow federal courts to hear more interstate class actions on a diversity jurisdiction basis…"). Thus, federal courts have original jurisdiction over class actions between parties with minimal diversity of citizenship in which the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d); *see also Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679 (7th Cir. 2006).

The YWC defendants contend that, in order for this court to have subject matter jurisdiction over this purported class action, the amount in controversy must be at least $5,000,000 as required by 28 U.S.C. § 1332(d). They contend that Baumann's allegation that the matter in controversy exceeds $5,000,000 is implausible given the volume of the YWC defendants' sales.

The problem with the defendants' argument is that this case was not brought solely on the basis of diversity of citizenship, at least not according to the complaint. Baumann's complaint alleges:

> The court has original subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121(a) as this action arises under the Federal

> Trademark Act, 15 U.S.C. § 105, et seq. The Court *also* has subject matter jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d), as the matter in controversy exceeds FIVE MILLION ($5,000,000.00) DOLLARS, exclusive of interest and costs, and this matter is a class action in which the putative class members are all citizens of states other than Defendants' states of citizenships.

(ECF No. 1 at 3, ¶ 7) (emphasis added). The defendants do not challenge the federal question jurisdiction of this court, nor could they, since federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

28 U.S.C. §§ 1331 and 1332(d) set forth distinct, independent grounds for federal court jurisdiction. *See Air China, Ltd. v. Kopf*, 472 F.App'x 45, 47-48 (2d Cir. 2012) (challenge to diversity subject matter jurisdiction "utterly meritless because federal question jurisdiction existed with respect to the RICO claim asserted against the defendants…"); *Hawaii ex rel Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1038-1039 (9th Cir. 2014) (discussing whether CAFA provides "an *alternative* basis for jurisdiction" apart from 28 U.S.C. § 1331) (emphasis added)); *In re Anthem, Inc.*, 2015 WL 5286992, *3 (N.D. Cal. Sept. 9, 2015) (having found subject matter jurisdiction under ERISA, the Court "need not address the independent question[] of whether diversity jurisdiction exists under CAFA"). CAFA did nothing to override federal jurisdiction grounded on a federal question. *see Blevins v. Aksut*, No. 15-00120, 2015 WL 10557923, *3 (S.D. Ala., Nov. 17, 2015) ("[N]o authority suggest[s] that Congress intended to annul federal

question subject matter jurisdiction under § 1331 in cases in which CAFA would also apply, and this Court has found no such authority.").

Since it is undisputed that federal question jurisdiction exists under § 1331, the court need not decide whether Baumann has plausibly pled the $5,000,000.00 required by § 1332(d). YWC's motion to dismiss for lack of subject matter jurisdiction is **denied.**

### IV. Non-corporate Defendants' Personal Liability

Lastly, the YWC defendants move to dismiss defendants Fong and Sat O from the lawsuit. Fong and Sat O are principal officers who together "manage the business affairs" of each of the corporate defendants. (ECF No. 12, ¶ 2.)

"General corporation law is clear that personal liability for a corporation's debts cannot be imposed on a person merely because he is an officer, shareholder, and incorporator of that corporation." *Musikiwanba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985). However, in the context of Lanham Act litigation, "[a]n individual can be jointly liable for a company's infringing conduct." *Microsoft Corp. v. Rechanik*, 249 F.App'x 476, 478 (7th Cir. 2007). In *Rechanik*, the Court of Appeals for the Seventh Circuit noted that "Microsoft's undisputed evidence showed that Rechanik intentionally encouraged Era Soft's infringement; thus he is personally liable as a contributor." *Id*. "[A] corporate officer will be held personally liable for trademark infringement and unfair competition if the officer is a moving, active force behind the corporation's infringement." *Dynamic Force, LLC v. Dynamic Force, Ltd*., 98 C 5922, 1999 WL 342407, at \*4 (N.D. Ill. May 14,

14
Case 2:16-cv-00605-WED   Filed 11/29/16   Page 14 of 15   Document 19

1999); *see also Comm. for Idaho's High Desert, Inc.*, 92 F.3d 814, 823 (9th Cir. 1996) ("[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.").

Baumann has sufficiently stated that Fong and Sat O authorized, directed, and or participated in the alleged Lanham Act violations. Baumann alleges that Fong and Sat O supervised the operations of YWC, took pecuniary gain from the infringement, and were "responsible for creating the copy on the packages." (ECF No. 15-7, at 6-7.) Since YWC has neither argued nor shown why Baumann is unable to proceed given this case law, Baumann's allegations are enough to warrant keeping Fong and Sat O as individual defendants.

YWC's motion to dismiss the individual defendants is **denied.**

Because the court has denied the defendants' motion on all grounds, the motion for attorneys' fees associated with bringing this motion is also **denied**.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss (ECF No. 11) is **denied**. Defendant shall answer or otherwise respond to plaintiffs' complaint no later than **December 13, 2016.**

Dated at Milwaukee, Wisconsin this 29th day of November, 2016.

WILLIAM E. DUFFIN
U.S. Magistrate Judge