| | |
|---|---|
| BAUMANN FARMS, LLP, et al., | ] |
| Plaintiffs, | ] |
| vs. | ] Case No: 2:16-cv-605-WED |
| YIN WALL CITY, INC., et al., | ] Judge: |
| Defendants. | ] Magistrate: Hon. William E. Duffin |
| YIN WALL CITY, INC., et al. | ] |
| Counterclaim and Third-Party Plaintiffs, | ] |
| vs. | ] |
| BAUMANN FARMS, LLP, et al. | ] |
| Counterclaim Defendants, | ] |
| and | ] |
| GINSENG BOARD OF WISCONSIN, INC.,et al., | ] |
| Third-Party Defendants. | ] |

## *MOTION FOR APPROVAL OF CLASS COUNSEL'S FEES AND EXPENSES, AND PLAINTIFFS' PARTICIPATION AWARDS*

### I. INTRODUCTION

A detailed account of the parties, the nature of the claims made, the defenses raised, the procedural history of this litigation, and the terms of settlement negotiated by the parties is fully set forth in the *Joint Motion for Preliminary Approval of Class Action Settlement* (dkt. 62, pp.

2-7), and will not be repeated here. The Court granted that motion by *Decision and Order* dated September 14, 2018 (dkt. 66), and scheduled a Final Fairness Hearing for January 23, 2019. *Id.*, p.7.[1] As part and parcel of that hearing, Class Counsel will be seeking an award of fees of $64,000.00, and unreimbursed expenses of $5,556.30. The three named Plaintiffs will also be requesting that the Court grant them participation awards of $1,500.00 each, in addition to any damages they are to receive as class members. All fees, expenses and participation awards are to be paid from the $160,000.00 common fund to be supplied by Defendants in settlement and release of all claims. Approval by the Court of requested fees, expenses and participation awards will result in damages payments to each of the 244 Settlement Class Members of $352.22, in excess of the sum estimated to be payable to each class member in the *Joint Motion for Preliminary Approval of Class Action Settlement* (dkt. 62, p. 9).[2]

## II. CLASS COUNSEL'S FEE AWARD

Class Counsel has represented the Ginseng Board of Wisconsin, Inc. (GBW), the trade association representing registered Wisconsin ginseng growers, in no fewer than six prior cases involving Lanham Act claims.[3] In each of those cases, GBW entered into agreements with counsel requiring payment of contingent fees of between 33% and 60%, depending upon the claims to be made; the nature of the target defendant (small retailer or large wholesaler); the

---

[1] A typo in the Court's Order (dkt. 66, p. 7, ¶8) indicates that the Final fairness hearing will be held on January 23, 2018, and not 2019.
[2] The Court was originally advised that the Settlement Class was comprised of 243 registered ginseng growers (dkt. 62, p.6, fn. 29). However, upon further review it appears the number was miscalculated, and there are in fact 244 members of the Settlement Class. One excluded putative class member was counted twice, as he not only opted out, but was also disqualified from participation in the Settlement Class because he was only a registered ginseng grower during the years 2016 and 2017.
[3] GBW is a Third-Party Defendant in this litigation.

complexity of the litigation, including logistical difficulties; and the anticipated recovery. In each of those cases GBW was given the option of an hourly retainer, which was rejected.[4]

In the instant action, each of the Plaintiffs was offered an hourly retainer (at $350.00 per hour) or a 40% contingent retainer. Each chose the contingent retainer, and signed a Contingent Retainer Agreement with Class Counsel, which also requires reimbursement of all litigation related expenses.[5]

In analyzing this case pre-litigation, counsel and Plaintiffs were aware that the Yin Wall City entities were owned by a husband and wife, and operated retail locations in Texas and Illinois. Even though Plaintiffs believed potential damages were adequate to meet the jurisdiction requirement for Class Action lawsuits, Defendants' ability to pay a substantial award was unknown.[6] Additionally, having litigated similar type suits in the past, Class Counsel and Plaintiffs appreciated that the discovery process was often challenging and less than optimal, due to language constraints between the parties, and the inability of Plaintiffs to obtain documents from third-party vendors, suppliers and wholesalers, who are often located in China and other countries.[7] Given these factors, Class Counsel and Plaintiffs agreed to a 40% contingent fee, plus costs and expenses.

The Seventh Circuit has instructed that District Courts are to assess fee requests of class counsel by determining, often ex post, what a market rate would have been for comparable legal services at the outset of the litigation.

---

[4] Hopkins' Declaration filed herewith, ¶2.
[5] Hopkins' Declaration, ¶¶ 3 & 4, and attached Exhibit A.
[6] Hopkins' Declaration, ¶5.
[7] Hopkins' Declaration, ¶6. It should be noted that even the sales records between the YWC entities and their U.S. based ginseng wholesalers were written in Chinese, requiring Class Counsel to obtain translation services through Language Source, a Wisconsin company, so that quantities and prices could be discerned. *Id.*, ¶7.

> In deciding fee levels in common fund cases, we have consistently directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir.2001) (collecting cases). In *Synthroid*, we vacated the district court's award after finding that it failed to follow our market-based approach when it capped counsel's fee percentage at 10% on the basis that there was a large recovery involved. *Id.* at 717-18. Because the attorneys' fee had not been determined up front in that case, we instructed the district court on remand to undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed. *Id.* at 718-19; see also *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir.1992) (the goal in awarding a reasonable attorneys' fee is to give the lawyer what he would have received in an arms-length negotiation).
>
> ………………………………………………..
>
> We have said that the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Synthroid*, 264 F.3d at 721. *Sutton v. Bernard*, 504 F.3d 688, 692, 693 (7th Cir., 2007).

See also *In re Synthroid Marketing Lit.*, 264 F.3d 712 (7th Cir., 2001); and *Birchmeier v. Caribbean Cruise Line, Inc.*, appeal no. 17-1626, decided by the Seventh Circuit on July 24, 2018 (copy attached).

Based upon the foregoing, Class Counsel believes the negotiated 40% contingent fee was, and is, fair and reasonable, and was in fact negotiated in good faith "at the outset of litigation."

Many Circuit Courts other than the Seventh also evaluate a contingent fee to be paid from a common fund by use of a "lodestar cross-check." See *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir., 1973); *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737 (9th Cir. 2017); and *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005). Such an analysis requires the District Court to determine the actual hours spent by class counsel in litigation, and apply a "multiplier" to the total fees

which would have been payable by the plaintiff on an hourly basis to further gage the reasonableness of the contingent fee, after also considering the complexity of the litigation and the likelihood of recovery.

The Seventh Circuit discussed the loadstar analysis in *In re Synthroid Marketing Lit.*, 264 F.3d 712, 719-721 (7th Cir., 2001), and rejected its use in favor of the market analysis approach discussed above. However, Class Counsel raises the loadstar analysis here as further proof that the parties did in fact negotiate a fair and reasonable contingent fee of 40% at the outset of litigation.

Class Counsel has spent 242.8 hours litigating this case.[8] Even if compensated at the modest rate of $350.00 per hour, fees would have exceeded $84,000.00 had Plaintiffs elected that method of retainer - more than one-half of the negotiated settlement. Expenses and costs of litigation would have been payable under either scenario.

Class Counsel's request for fees in the amount of 40% of the settlement fund is reasonable, and is based upon good faith negotiations between counsel and Plaintiffs prior to the commencement of litigation.

### III. LITIGATION EXPENSES AND COSTS

Normal and necessary costs and expenses of litigation are also recoverable by Class Counsel, especially where, as here, counsel and his clients negotiated at the onset of litigation for reimbursement in the event of a successful outcome. See generally, *In re Synthroid Marketing Lit.*, 264 F.3d 712, 722 (7th Cir., 2001). The claimed litigation expenses in the amount of

---

[8] See Hopkins' Declaration, ¶8, and attached Exhibit B. This does not include any time spent litigating the preceding action, which was filed in the Northern District of Illinois by Ginseng Board of Wisconsin, Inc. against Defendants, or in preparing the instant motion.

$5,556.30 are relatively modest when compared to the total recovery.[9] All of the claimed expenses are the type ordinarily incurred in litigation, such as filing fees, witness fees, court reporter fees, service of process costs, travel expenses, and sums paid to expert witnesses.

Class Counsel's claimed expenses were incurred in advancement of the pending litigation, are reasonable in amount, and should be reimbursed from the total settlement negotiated on behalf of the Settlement Class.[10]

### IV. PLAINTIFFS' PARTICIPATION AWARDS

The named Plaintiffs are ginseng farmers. They are all small business owners in a very labor intensive business; i.e., the growing, harvesting, processing and sale of ginseng root. Any time spent in participating in this litigation is time unavailable to them for running their businesses, or spending with their families.

Each of the named Plaintiffs have interacted with and assisted Class Counsel in prosecution of this case. Each Plaintiff has produced business records in response to production requests propounded by Defendants, as well as having responded to written interrogatories. Each Plaintiff was engaged in the court ordered mediation with Magistrate Judge Gorence. Each Plaintiff also consulted with Class Counsel during the ongoing settlement negotiations.[11]

" Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Marketing Lit.*, 264 F.3d 712, 722 (7th Cir., 2001). In the instant action, Plaintiffs are requesting participation awards of $1,500.00 each. This is a nominal sum and, in the estimation of Class Counsel, would not fully reimburse Plaintiffs for the costs, both in

---

[9] Hopkins' Declaration ¶9, and attached Exhibit C.
[10] Hopkins' Declaration, ¶10.
[11] Hopkins' Declaration, ¶11.

time and lost opportunities, associated with their active involvement in this litigation. Class Counsel believes such an award is necessary to ensure participation of putative class members in litigation such as this.

## V. CONCLUSION

Class Counsel anticipates he will spend an additional 20 to 30 hours in mailing notices, preparing for and attending the Final Fairness Hearing, and in administering pay-out of the net settlement proceeds to Settlement Class Members, in the event the Court approves the settlement in January. Additional expenses for printing, postage and check preparation in the range of $500 to $800 will also be incurred.[12] In the event the pending motion for fees and expenses is granted, Class Counsel will not seek additional or adjusted awards for these sums.[13]

Based upon the foregoing, Class Counsel respectively requests that the Court enter an order providing that counsel be paid $64,000.00 in fees and $5,556.30 in expenses; and that Plaintiffs each be paid $1,500.00 in participation awards, in addition to any damages payable to them as Settlement Class Members - all to be paid from the total negotiated settlement of $160,000.00.

Dated this 15th day of October, 2018.

       /s/ Michael T. Hopkins   .
Michael T. Hopkins,
LEAD COUNSEL
mth@ip-lit.us
WI Bar No: 1014792

---

[12] Hopkins' Declaration, ¶12.
[13] Hopkins' Declaration, ¶13.

IP-Litigation.US, LLC
757 N. Broadway, Suite 201
Milwaukee, WI 53202

Tel/Fax: 888-227-1655

attorney for Plaintiffs